HARVEY SYPHERD V. STATE OF NEBRASKA.

FILED JUNE 16, 1932. No. 28254.

*Carrico & Carrico*, for plaintiff in error.

*C. A. Sorensen, Attorney General,* and *Clifford L. Rein, contra.*

Heard before GOSS, C. J., ROSE, DEAN, EBERLY, DAY and PAINE, JJ., and RYAN, District Judge.

EBERLY, J.

In the district court for Kearney county, Harvey Sypherd was convicted of stealing a quantity of wheat of the value of $42, the property of Catherine Stanton. From the action of the trial court overruling his motion for a new trial, and the sentence imposed, he prosecutes error.

The record has been read with care. It is quite apparent that no error was committed in the denial of defendant's motion for a discharge, based upon the transcript of the examining magistrate; nor is the court order permitting the indorsement of the names of additional witnesses on the information properly the subject of complaint; nor did the district court err in overruling the motion of the defendant for a continuance for 48 hours based wholly on the fact of the indorsement of the additional names and without further showing to sustain the same; so, too, it appears that the instruction given by the court on its own motion on the question of the defendant's flight was warranted by the evidence then before it, and was not prejudicial to the defendant. However, the assignment of error most stressed by the defendant relates to the sufficiency of the evidence to sustain the conviction.

It must be said that, in the light of the testimony before us, the felonious stealing of 75 bushels of wheat, "machine measure," of a value in excess of $35, the property of Catherine Stanton, by some person on the night of October 18-19, 1930, is indisputably established. The corpus delicti is fully proved. A lawful jury heard the evidence adduced, observed the witnesses testifying (which included the defendant), and, after having been properly instructed as to the law of the case, determined that the defendant was a participator in the commission of the offense. After a careful consideration of the evidence, we arrive at the conclusion that the testimony before this jury, though conflicting in part, and largely circumstantial, justified their verdict.

At least it may be said that, notwithstanding the denials of the defendant, the following facts and circumstances are clearly established: That on Saturday, October 18, 1930, about suppertime, the defendant rented a garage in Hastings, Nebraska; defendant admits that this was provided by him, in part, for the storage of wheat which he expected to receive from a source in the country then unknown to him, and while he admits that the expected wheat later appeared in his rented garage, he still insists that he now has no knowledge of this source, or means by which the same may be identified; that during the night of the 18th-19th of October, an automobile or truck was heard approaching this rented garage about 5 o'clock in the early morning; that Sunday forenoon a quantity of wheat in sacks, substantially identical in amount with the wheat stolen from the Stanton farm, was discovered in this garage; that early Sunday morning following, the owner of a truck in the city of Hastings discovered that it was missing from the accustomed place of keeping; that later in the same morning it was found standing near a church in the city of Hastings, with all gasoline out of the tank, and with a quart or more of wheat scattered over the bottom of its bed; that fresh tire tracks left on the Stanton farm at the granary where the stolen wheat had been loaded into a truck, evidently engaged in its removal, indicate that that conveyance was equipped with tires having a diamond on the rim; that the truck found near the church with wheat in its box was similarly equipped with tires having a diamond on their rims; that this defendant had sometime previously rented this identical truck from its proprietor, and used the same, and was thus familiar with its operation, and the fair inference is suggested, if not proved, that he thereby knew where it was kept by its owner; that Sunday morning following the theft, a note, admitted to be in the defendant's handwriting, was found by his brother in the latter's car, informing him of the whereabouts of the stored wheat, and directing the sale of the wheat in

the rented garage, which, the evidence already referred to indicates, had been delivered during the previous night; that a letter in defendant's handwriting, dated Sunday the 19th, was received by the proprietor of a store where the defendant had on the Saturday previous cashed a "no-fund" check, requesting this merchant to take possession of some "45 sacks of wheat" that defendant then had stored in his rented garage, and sell it, and from the proceeds of the sale deduct the amount of the check and the necessary expenses, and to send the balance of the proceeds to the defendant.

True, the defendant claims to have himself delivered 15 bushels of the wheat and placed the same in this garage, but there is no evidence in the record which in any manner corroborates defendant's statement that this wheat was there delivered by him on the 17th or 18th of October. He also claims that a certain person who was indebted to him in the sum of $52 was expected to secure some $52 worth of wheat from a farmer in the country, whose identity is not disclosed, for which 65 cents a bushel (more than the market price) was to be paid. But this would make the total amount of the wheat to be received at' the rented garage 95 bushels. The evidence, contrary to defendant's contention, sustains the conclusion that this wheat did not exceed 75 bushels. It is also admitted that the defendant was not storing this grain with a view to a raise in price. It was at all times his intention to make an early disposition or sale of it. In view of these facts, it is quite obvious that the ordinary, the natural, and the direct method of handling the transactions would have been for the defendant to have delivered the 15 bushels, which he claimed to have stored in the garage, to the market direct when he received it, and in like manner to have had the remaining wheat, if such there was, delivered to market when it was received. By so doing, not only would the cost of the rental of the garage have been unnecessary, but the handling of the wheat twice in the course of de-

livery would have likewise been avoided. It would indeed seem that the course of business as followed, in the light of the surrounding circumstances, suggests an attempt at concealment. But we do not attempt to detail all of the evidence in the record. Some of it is expressly denied by the defendant on the witness-stand. His denial was made before the trial jury, and they were the proper judges of the facts, and had the better opportunity for determining the correctness of the statements of the several witnesses testifying before them. Taking the evidence as an entirety, and giving due weight to that favorable to the defendant, we are still inclined to the view: First, that the commission of the crime by some one was indisputably established; second, that the evidence in the record, fairly considered, may be said, if believed, to connect the defendant as a participator in the transaction by proof establishing the fact beyond a reasonable doubt.

In view of this situation, we are of the opinion that the district court did not err in overruling the motion for a new trial, or in the sentence imposed, and its action is therefore

AFFIRMED.